# 22-cv-03807-pmh

# United States District Court
# Southern District of New York

**(Case No. 12-23616-RDD)**
In re:
MOSDOS CHOFETZ CHAIM INC.,

*Debtor.*

_____

**(Adv. Pro. No. 21-07023-RDD)**
CONGREGANTS OF MOSDOS CHOFETZ CHAIM INC.
a/k/a KIRYAS RADIN,

*Plaintiffs,*

- against -

MOSDOS CHOFETZ CHAIM INC., CHOFETZ CHAIM INC.,
TBG RADIN LLC, SHEM OLAM, LLC, CONGREGATION
RADIN DEVELOPMENT INC., ARYEH ZAKS, BEATRICE
WALDMAN ZAKS, MENDEL ZAKS, GITTEL ZAKS LAYOSH,
ELIYAHU LAYOSH, SAMUEL MARKOWITZ, DEBORAH ZAKS
HILLMAN, YOM T. HENIG, STEVEN GREEN, DANIEL GREEN,
ABRAHAM ZAKS and STERLING NATIONAL BANK,

*Defendants.*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT,
SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR APPELLANTS

ABRAMS FENSTERMAN LLP
*Attorneys for Appellants*
81 Main Street, Suite 400
White Plains, New York 10601
(914) 607-7070
dalter@abramslaw.com

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT

POINT I

THE BANKRUPTCY COURT ABUSED ITS DISCRETION BY ORDERING APPELLANTS EVICTED..................................................................3

POINT II

THE EVICTION ORDER VIOLATES APPELLANTS' FREE-SPEECH RIGHTS ........................................................................................................7

CONCLUSION ............................................................................................................12

CERTIFICATE OF COMPLIANCE ..........................................................................13

# TABLE OF AUTHORITIES

*Page(s)*

**Cases:**

*Bose Corp. v. Consumers Union of United States, Inc.*,
    466 U.S. 485 (1984)..................................................................................................8

*Chevron Corp. v. Donziger*,
    990 F.3d 191 (2d Cir. 2021) ........................................................................1, 3, 4, 5, 6

*Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees
    and Restaurant Employees Intern'l Un.*,
    239 F.3d 172, 179 (2d Cir. 2001) ...............................................................................10

*Next Investments LLC v. Bank of China*,
    12 F.4th 119 (2d Cir. 2021) .........................................................................................6

*Scott v. Coughlin*,
    344 F.3d 282 (2d Cir. 2003) ......................................................................................11

**Rules, Laws & Statutes:**

Fed. R. Bankr. P. 7070 ............................................................................................................11

## PRELIMINARY STATEMENT

Appellants respectfully submit this reply brief in further support of their appeal from the Eviction Order.[1] CRDI cannot defend the bankruptcy court's rulings with candor, so, instead, it ignores controlling law and distorts the facts. To start, Second Circuit law allows a party to rely on a judge's express interpretation of his or her own order, despite any inconsistency between the two, without fear of incurring contempt sanctions. Here, over several months and throughout CRDI's repeated motions to enforce the Injunction, the bankruptcy court steadfastly maintained that it would *not* evict Appellants from their homes. Rather, the bankruptcy court stated many times that the Injunction did *not* grant CRDI an "eviction right." (A. 84).

Appellants were entitled to rely on those assurances and to conduct themselves accordingly without fear of eviction, that is, to remain in their homes and incur additional monetary sanctions while appealing the Injunction. CRDI's response to that legal reality is to omit from its brief any reference to *Chevron Corp. v. Donziger*, 990 F.3d 191 (2d Cir. 2021) – the decision that most clearly states the controlling rule. That strategy betrays CRDI's deeply flawed position, as does its dissembling about Appellants' failure to challenge the *Injunction* as ambiguous

---

[1] The defined terms used in Appellants' main brief are used again in this reply brief.

*before* the bankruptcy court issued the Eviction Order. *See* CRDI Br. at 18. Appellants' appeal from the Eviction Order does not belatedly challenge the clarity of the Injunction. It rests on the bankruptcy court's inconsistent interpretation of its own order.

Regarding Shimon's $5000 fine for peaceably urging others to attend another synagogue, there is no question that Shimon was punished *for the content of his speech*. The bankruptcy judge conceded as much when he rationalized Shimon's fine as consistent with the bankruptcy court's "long expressed view that by far the most provocative and contemptuous conduct would be related to worship [sic.] at people away from the synagogue, even if not done in an aggressive way." (A. 1825-26). Because the bankruptcy court had already punished Shimon separately for entering upon the Property (A. 1448), the only "conduct" implicated by the $5000 fine was Shimon's non-disruptive statement encouraging others to attend his father's religious services elsewhere. Under the First Amendment, that is unlawful censorship.

Once again, however, CRDI ignores the fact that the bankruptcy court separately punished Shimon for entering upon the Property and insists instead that Shimon is trying to defend his asserted trespass under the banner of free speech. That argument is demonstrably false. Shimon's point is simple and straightforward: you can lawfully punish a person for entering a neighbor's kitchen without

2

permission, but you cannot additionally fine the trespasser for merely stating while there that the soup at home smells better.

## ARGUMENT

## POINT I

### THE BANKRUPTCY COURT ABUSED ITS DISCRETION BY ORDERING APPELLANTS EVICTED

The crux of CRDI's defense of the Eviction Order is directly at odds with the Second Circuit's controlling decision – the case that CRDI notably omits from its brief. CRDI insists that the language of the Injunction is the measure of Appellants' contempt. CRDI faults Appellants' challenge to the Eviction Order because it "does *not* go to the language of the Injunction itself (which is the criteria), but rather to the comments the Bankruptcy Court made *prior* to issuing" the Eviction Order. CRDI Br. at 25 (emphasis in original). CRDI has it exactly backwards.

In *Chevron Corp.*, the Second Circuit reversed a contempt order stemming from a party's conduct that plainly conflicted with the clear language of the district court's injunction. There, the district court subsequently entered another order interpreting its prior ruling, which "injected ambiguity in an otherwise largely unambiguous Injunction." 990 F.3d at 210. The Second Circuit observed that, "[h]owever clear the original language of the injunction, the [subsequent order] muddied the waters." *Id.* at 212.

3

The party sanctioned in *Chevron Corp.* had engaged in conduct that was consistent with the district court's explanation of its own ruling, and the Court of Appeals determined that "he was entitled to rely on" that explanation. *Id.* at 212. In vacating the contempt order, the Court held that "parties subject to [an] injunction should be entitled to rely on the issuing court's professional interpretation of it and tailor their behavior accordingly." *Id.* at 210. The dispositive issue in the case, therefore, was not "the best reading of the Injunction," but whether the terms of the order, as "conveyed" by the court, "left no doubt" in the party's mind what was forbidden by the injunction. *Id.* at 210 (internal quotation marks omitted).

Here, Judge Drain's repeated and consistent interpretation of the Injunction more than "muddied the waters." *Chevron Corp.*, 990 F.3d at 210. It "conveyed" a specific reading of his order. *Id.* And given Judge Drain's "own interpretation of the Injunction, it was not unreasonable for" Appellants to think that the bankruptcy court would *not* evict them from their homes while they appealed the Injunction. *Id.* at 211.

CRDI tries to limit the import of the bankruptcy court's interpretive directives by arguing that Judge Drain made them solely "*in connection with*" the disposition of specific motions. CRDI Br. at 15 (emphasis in original). But the bankruptcy court's explanation of its own order was not so cramped. It fully "communicated the court's interpretation" whether Appellants' continued residence on the Property

4

would lead to their eviction by the bankruptcy court.  *Chevron Corp.*, 990 F.3d at 210

For example, the bankruptcy court instructed Appellants' counsel to inform Appellants that "they may be subject to eviction in some other proceeding, but my order *doesn't give CRDI the right to just say, you're out*." (A. 76 (emphasis added)). The bankruptcy judge further maintained that his "jurisdiction did not extend, for example, to eviction actions" (A. 119), and that "relief that would be tantamount to eviction . . . needs to be in state court" (A 420-21).  And offering his definitive explanation of the Injunction's force, Judge Drain ultimately stated: "I will not enforce the order, other than by monetary sanctions, and I will not order sanctions that are tantamount to an eviction.  That relief will have to be found – obtained from another court."  (A. 422-23).[2]

CRDI also complains at great length that, before the bankruptcy court issued the Eviction Order, Appellants never argued that the Injunction was ambiguous, and

---

[2]   CRDI further argues that, "even assuming *arguendo* that the Appellants' preposterous 'belief' that the Bankruptcy Court would not 'evict' them as a contempt sanction was real . . . , that *clearly* does not affect the Bankruptcy Court's ability to issue a rule 70 order" for the Marshals to deliver the Property to CRDI.  CRDI Br. at 28 (emphasis in original).  That argument is just more sophistry.  The bankruptcy court repeatedly rejected the idea that it would enforce "sanctions that are tantamount to an eviction" (A. 420-21, 422-23, 425), or "anything else like that" (A. 45).   By CRDI's own description, *see* CRDI Br. at 17 & n.8, a writ of assistance pursuant to Fed. R. Civ. P. 70 is obviously "tantamount to an eviction."

thus they should be barred from arguing that point now. *See* CRDI Br. at 18-23. CRDI misconstrues Appellants' claim. Appellants have never argued that the text of the *Injunction* is ambiguous about eviction. Whether the text of the Injunction is ambiguous on that issue is not the relevant question. *See infra* at 4. What is pertinent here is the way in which the bankruptcy court "conveyed" its own interpretation of the Injunction to Appellants. *See Chevron Corp.*, 990 F.3d at 210.

Again, before the Eviction Order, Judge Drain made eminently clear to both Appellants and CRDI that his "order doesn't give CRDI the right to just say, you're out" (A. 76), and that he would "not enforce the order, other than by monetary sanctions, and [would] not order sanctions that are tantamount to an eviction" (A. 422-23). Why, then, *before* the Eviction Order, would Appellants argue to any court that the Injunction was ambiguous about eviction? Judge Drain assured Appellants that he would not evict them. They were "entitled to rely on the issuing court's professional interpretation of [the Injunction] and tailor their behavior accordingly." *Chevron Corp.*, 990 F.3d at 210. And they did just that.[3]

The bankruptcy court, not Appellants, changed its tune. And when Judge Drain reversed course on their eviction, they appropriately challenged his ruling.

---

[3] For those reasons, too, the Eviction Order cannot stand because the sanction of eviction is *not* "reasonable in relation to the facts." *Next Investments LLC v. Bank of China*, 12 F.4th 119, 130 (2d Cir. 2021) (internal quotation marks omitted).

6

CRDI's argument that Appellants now "are barred" from challenging the Eviction Order "under the doctrine of waiver" is frivolous. CRDI Br. at 23.

This Court should vacate the bankruptcy judge's order evicting Appellants from their homes and nothing CRDI has said negates that conclusion.

## POINT II

### THE EVICTION ORDER VIOLATES APPELLANTS' FREE-SPEECH RIGHTS

The bankruptcy judge punished Shimon because he was offended by Shimon's peaceful and nondisruptive effort to persuade religious observants on the Property to attend a different synagogue. CRDI cannot legitimately defend Shimon's $5000 fine because it blatantly violates the First Amendment's rule against content discrimination. So CRDI now tries another tack.

According to CRDI, Shimon's fine is justified because the Injunction bars Appellants from "disrupting, conducting or interfering with any religious service or study taking place on the CRDI Property." *See* CRDI Br. at 30. In its self-serving view, "attempting to persuade . . . persons who are about to enter into a synagogue for the purpose of worship or study *on the CRDI Property* not to do so is a clear disruption and/or interference with religious service [sic.] or study taking place thereon." *Id.* at 38 (emphasis in original). There is a lethal defect in that

7

argument, however. The bankruptcy court *never found* that Shimon disrupted or blocked any religious practice on the Property.[4]

To the contrary, the bankruptcy court found that the verbal exchange for which it fined Shimon was "peaceful" and did not "escilat[e]" into anything unruly. (A. 1825-26). Judge Drain found that Shimon merely "*attempt[ed] . . . to encourage* persons wishing to enter the synagogue building located on [the Property] to go elsewhere." (A. 1445 (emphasis added)). He did not even suggest, much less conclude, that Shimon deterred anyone from attending religious services or in any way interfered with religious study. Thus, CRDI's contention that Judge Drain "implicitly ruled" that Shimon was disruptive is also demonstrably untrue. CRDI Br. at 38.[5]

---

[4] CRDI's proclivity for making false accusations against Appellants is well documented. CRDI accused Appellant Nochum Brody of "attempt[ing] to encourage persons wishing to enter the synagogue building located on the CRDI Property to go elsewhere." (A. 1448). The bankruptcy court rejected that claim. (*Id.*). CRDI accused several Appellants of "interfer[ing] with student groups that wished to occupy the space on the CRDI Property." (*Id.*). The bankruptcy court rejected that claim. (*Id.*). And CRDI accused Appellants of "harass[ing] [a] tenant or prospective tenant on the CRDI Property." (A. 1448-49). The bankruptcy court rejected that claim, too. (*Id.*). CRDI is not credible.

[5] Even if the bankruptcy court had determined that Shimon interfered with religious activity on the Property, this Court would be required to "make an independent examination of the whole record, so as to assure [itself] that the judgment does not constitute a forbidden intrusion on the field of free expression." *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 508 (1984) (internal citations and quotation marks omitted). Any such hypothetical finding would be clearly erroneous, though, because the record is devoid of any evidence

8

CRDI uses the same falsehood in another way to prop up the bankruptcy court's erroneous ruling. Judge Drain clearly and impermissibly double-dipped in violation of the First Amendment by sanctioning Shimon for *both* entering upon the Property and then separately for *speaking* while there. CRDI recasts Appellants' argument to better suit its purposes. According to CRDI, "Appellants contend that the Bankruptcy Court 'double dipped' by prohibiting *both* entry onto the CRDI Property *and* the specific act of interfering with religious services thereon." CRDI Br. at 37 n.15 (emphasis in original and underscoring added). That statement is false and CRDI knows it.

Shimon never engaged in "the specific act of interfering with religious services" or any other disruptive conduct. CRDI Br. at 37 n.15. As the bankruptcy court found, he simply spoke to people on the Property, who peacefully continued on their way to worship. (A. 1825-26). That sort of advocacy is not subject to punishment.

In short, by setting aside Shimon's $5000 fine as an impermissible content-based penalty, this Court would not undermine the "fundamental right of a property owner to exclude others." CRDI Br. at 31. The bankruptcy court fully protected CRDI's property rights by separately punishing Shimon for coming onto the

---

that Shimon was disruptive. As the bankruptcy court found, he merely "informed" several individuals "that they could or should go to services being held at a different location by his father." (A. 1825-26).

9

Property. The additional $5000 slap was nothing more than an injudicious fit of pique.[6]

Finally, CRDI tries to stave off a possible remand to clarify whether the bankruptcy court ordered Appellants' eviction because Shimon spoke. *See* CRDI Br. at 39 n.16. It takes two steps to derail any further inquiry. First, CRDI mischaracterizes Appellants' argument by invoking a now-familiar falsehood. Contrary to CRDI's mischaracterization, Appellants do not "question whether *the proven interference by Shimon Zaks with religious activities* on the CRDI Property 'was a significant factor'" prompting the Bankruptcy Court to issue the Eviction Order. *Id.* (emphasis added). Again, there is no "proven interference by Shimon Zaks with religious activities" or anything else. CRDI should know that simply repeating a false statement over and over does not make it true.

---

[6]   The bankruptcy court's response to Sima Zaks for also merely speaking on the Property (A. 1619-20) displays the same censorial intent. Although declining to sanction Sima for her comments, the bankruptcy judge issued a nebulous warning "that similar future conduct may be viewed as contempt" (A. 1446). What *conduct*? Someone affiliated with CRDI accused Sima of calling him an insulting name while Sima sat in her car with her elderly mother. (A. 1619-20). The bankruptcy court's conclusion that Sima's speech could violate the Eviction Order (A. 1446) demonstrates that the terms of the order "are so vague and imprecise" that Appellants "cannot fairly determine what future speech is permitted and what speech might put them in contempt." *Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees and Restaurant Employees Intern'l Un.*, 239 F.3d 172, 179 (2d Cir. 2001).

Second, CRDI insists that the "Rule 70 order [directing Appellants' eviction] was independently issued for the purpose of enforcing CRDI's property ownership rights." CRDI Br. at 39 n.16. CRDI assumes its desired conclusion. On remand, the necessary inquiry would be whether – absent Shimon's protected speech – the bankruptcy court would have evicted Appellants pursuant to Fed. R. Bankr. P. 7070.

Notably, prior to Shimon speaking, which Judge Drain considered as "*by far the most provocative and contemptuous conduct*" (A. 1825-26 (emphasis added)), the bankruptcy court had consistently and categorically refused to "order sanctions that are tantamount to an eviction" (A. 422-23). The bankruptcy court's abrupt change in course suggests a possible unlawful motivation, and an eviction driven by an improper motive cannot stand.[7]

---

[7] Generally, a plaintiff in a First Amendment retaliation case "has the burden of showing that an improper motive played a substantial part in [the] defendant's action. The burden then shifts to [the] defendant to show that it would have taken exactly the same action absent the improper motive." *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003). The facts and circumstances preceding the Eviction Order meet that initial burden. Given the bankruptcy court's steadfast refusal to evict Appellants prior to Shimon's statement, it is highly questionably whether "it would have taken exactly the same action absent [an] improper motive." *Id.*

11

## CONCLUSION

The Court should vacate the Eviction Order insofar as it directs the removal of Appellants from their homes and fines Shimon Zaks $5,000 for speaking.

Dated:    White Plains, New York
          July 18, 2022

**ABRAMS FENSTERMAN LLP**
*Attorneys for Appellants*

*/s/ Daniel S. Alter, Esq.*
Daniel S. Alter
Robert A. Spolzino
Edward A. Smith
81 Main Street, Suite 400
White Plains, New York 10601
(914) 607-7010
*Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

Docket No.: 22-cv-03807-pmh
Case Name: *In re: Mosdos Chofetz Chaim, Inc,*
Document Title: REPLY BRIEF FOR APPELLANTS

_____

  Pursuant to Federal Rules of Procedure, I certify that the accompanying Appellants' Brief, contains 2,737 words, excluding the parts of the document that are exempt under rules of this Court. This certificate was prepared in reliance on the word-count function of the word processing system (Microsoft Word) used to prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 18, 2022

                 **ABRAMS FENSTERMAN LLP**
                 *Attorneys for Appellants*

                 */s/ Daniel S. Alter, Esq.*
                 Daniel S. Alter
                 Robert A. Spolzino
                 Edward A. Smith
                 81 Main Street, Suite 400
                 White Plains, New York 10601
                 (914) 607-7010
                 *Attorneys for Appellants*