UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RABBI MAYER ZAKS, et al.,

                Appellants,

-against-

CONGREGATION RADIN DEVELOPMENT, INC., et al.,

                Respondents.

**MEMORANDUM OPINION AND ORDER**

22-CV-03807 (PMH)

PHILIP M. HALPERN, United States District Judge:

      The instant appeal, like the many that preceded it,[1] is yet another "part of a long-running quarrel between two rabbis—brothers, no less—regarding the transfer of real property located at 1-[5]0 Kiryas Radin Drive, Spring Valley, New York 10977."[2] *Zaks v. Mosdos Chofetz Chaim Inc.*, No. 21-CV-02872, 2021 WL 5854030, at *1 (S.D.N.Y. Dec. 7, 2021). This appeal concerns the April 14, 2022 Order and Judgment (the "Order") entered by Judge Drain of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the underlying adversary proceeding captioned *Congregants of Mosdos Chofetz Chaim Inc. v. Mosdos*

---

[1] *See, e.g.*, *In re Mosdos Chofetz Chaim, Inc.*, No. 22-CV-06201 (S.D.N.Y. 2022); *In re Mosdos Chofetz Chaim, Inc.*, No. 22-CV-06191 (S.D.N.Y. 2022); *In re Mosdos Chofetz Chaim, Inc.*, No. 22-CV-02450 (S.D.N.Y. 2022); *In re Mosdos Chofetz Chaim, Inc.*, No. 21-CV-10441 (S.D.N.Y. 2021); *In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-09256 (S.D.N.Y. 2021); *In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-09186 (S.D.N.Y. 2021); *In re Mosdos Chofetz Chaim Inc.*, No. 21-CV-08691 (S.D.N.Y. 2021); *In re Mosdos Chofetz Chaim, Inc.*, No. 21-CV-05679 (S.D.N.Y. 2021); *In re Mosdos Chofetz Chaim, Inc.*, No. 21-CV-05654 (S.D.N.Y. 2021); *In re Mosdos Chofetz Chaim, Inc.*, No. 21-CV-02872 (S.D.N.Y. 2021).

[2] The Court will refer to the real property at 1-50 Kiryas Radin Drive, Spring Valley, New York 10977 as the "Property."

*Chofetz Chaim, Inc., et al.*, No. 21-07023 (Bankr. S.D.N.Y. 2021). (Br. Doc. 198, "Order").[3]

The Order partially granted a motion filed by certain defendants in the adversary proceeding—Rabbi Aryeh Zaks ("Rabbi Aryeh"), Chofetz Chaim Inc. ("CCI"), and Congregation Radin Development Inc. ("CRDI," and together, "Respondents")—for the imposition of contempt sanctions against Rabbi Mayer Zaks ("Rabbi Mayer"), Sima Weintraub Zaks ("Sima"), Shimon Zaks ("Shimon"), Nochum Z. Brody ("Brody"), Yisroel Hochman, and Faige Hochman ("Appellants").[4] (*Id.* at 9). Appellants took an appeal from the Order on May 10, 2022. (Doc. 1). Appellants sought emergency relief in connection with their appeal, but Judge Seibel, before whom this case proceeded prior to its reassignment to this Court as related to *In re Mosdos Chofetz Chaim, Inc.*, No. 21-CV-04633 (S.D.N.Y. 2021), declined to grant such relief and directed Appellants to instead seek a stay pending appeal from the Bankruptcy Court. (Doc. 16).[5]

Appellants, in compliance with an expedited briefing schedule set by this Court, filed their opening brief on June 17, 2022 (Doc. 20, "App. Br."), Respondents filed their opposition on July

---

[3] Citations to "Br. Doc." refer to docket entries in the underlying adversary proceeding whereas citations to "Doc." refer to docket entries in this matter. "The Court may take judicial notice of the bankruptcy docket, and documents on the docket not included in Appellant's designation of the record on appeal, including hearing transcripts." *Morillo v. Wells Fargo Bank, N.A.*, No. 19-CV-08183, 2020 WL 2539068, at *1 n.2 (S.D.N.Y. May 19, 2020) (citing Fed. R. Evid. 201).

[4] The Notice of Appeal at Doc. 1 lists these six individuals as the Appellants. However, in the preliminary statement of Appellants' brief, they identify a list of "[n]onparty appellants," which includes Aron Zaks, Henoch Zaks, Yosef Tzvi Zaks, and Leah Brody but omits Shimon. (App. Br. at 1). Nevertheless, the Court will consider the six people who the Bankruptcy Court issued contempt sanctions against in the Order, which are the same six as those listed in the Notice of Appeal, as the "Appellants."

[5] The Bankruptcy Court granted, on June 3, 2022, a conditional stay of the Order pending appeal through August 1, 2022. (Br. Doc. 246). The underlying bankruptcy proceeding was reassigned to Judge Sean H. Lane on July 1, 2022, who scheduled a hearing on Appellants' pending motion to extend the conditional stay for September 9, 2022. (Br. Doc. 277). The Bankruptcy Court has not yet taken any action on the Order.

11, 2022 (Doc. 21, "Opp. Br."), and Appellants replied on July 18, 2022 (Doc. 22, "Reply"). For the reasons set forth below, the Order is AFFIRMED.

## BACKGROUND

As this Court has previously noted, "Appellant's buckshot approach to appeals from Bankruptcy Court orders has produced a murky procedural history." *Congregants of Mosdos Chofetz Chaim Inc. v. Mosdos Chofetz Chaim Inc.*, No. 21-CV-05654, 2021 WL 5359663, at *1 n.2 (S.D.N.Y. Nov. 17, 2021). No doubt the parties are intimately familiar with the underlying facts and extensive procedural history of their dispute and, as such, the Court provides only a brief recitation of the background necessary to decide this appeal.

The Bankruptcy Court: (i) on May 25, 2021, issued a modified Order enjoining Appellants and others in concert with them from entering onto or remaining on the Property (Br. Doc. 24, the "Injunction"); (ii) on June 14, 2021, clarified that the Injunction does not bar any person with a valid lease or property right to the Property from occupying their lease or exercising their rights (Br. Doc. 49); (iii) on June 15, 2021, held certain Appellants in contempt for violating the Injunction and awarded monetary sanctions against them for future violations (Br. Doc. 54, "Contempt Order"); and (iv) on September 8, 2021, found that Appellants continued to violate the Injunction, declined to impose monetary sanctions because of Appellants' belief that they were entitled to enter the Property under purported First Amendment rights. The September 8, 2021 Order further clarified that Appellants "have no right under the United States Constitution, the New York State Constitution, or any applicable law, to enter onto the CRDI Property or into the CCI Building, or to remain thereupon" and that the Injunction remained fully extant and enforceable (Br. Doc. 122, "Enforcement Order" at 7-8). This Court denied Appellants' applications for a stay of the Enforcement Order and "emergency conference" thereto on

September 13, 2021. (*In re Mosdos Chofetz Chaim, Inc.*, No. 21-CV-05654 (S.D.N.Y. 2021) (Doc. 20)).

Respondents moved for a second time to enforce the Bankruptcy Court's prior Orders on November 19, 2021, alleging that Appellants continued to enter onto and remain on the Property since the Bankruptcy Court issued the Enforcement Order. Respondents sought monetary judgments against Appellants as well as a writ of attachment directing the United States Marshal's Service to remove Appellants from the Property. (Br. Doc. 134). The Bankruptcy Court held an evidentiary hearing on Respondents' second enforcement motion on December 2, 2021, finding "clear and convincing proof" that Appellants continued to violate the Injunction, but holding that Appellants had the right to establish the "impossibility defense to contempt." (Br. Doc. 162 at 204:25; 207:17-18). The Bankruptcy Court then held a continued hearing on Respondents' second enforcement motion on March 4, 2022, which had to be adjourned based on "unruly, disorderly, argumentative, and improper conduct" at the hearing by Rabbi Mayer.[6] (Order at 6). The Bankruptcy Court continued the hearing on April 4 and 5, 2022 and, at the conclusion, recited its findings of fact and conclusions of law on the record. (Doc. 220 at 53:13-100:04).

The Bankruptcy Court thereafter issued the Order on April 14, 2022 and found therein that: (i) Respondents established by clear and convincing evidence that Appellants each intentionally violated the Injunction and Enforcement Order by occupying housing units on the Property and failed to establish an impossibility defense; (ii) Respondents established by clear and convincing evidence that Shimon intentionally violated the Injunction and Enforcement Order by attempting to encourage persons wishing to enter the synagogue building on the Property to go elsewhere;

---

[6] Rabbi Mayer was held in contempt by the Bankruptcy Court for this conduct on March 23, 2022 and appealed that citation on April 26, 2022. That appeal is now pending before Judge Seibel. *In re Mosdos Chofetz Chaim, Inc.*, No. 21-CV-03371 (S.D.N.Y. 2021).

4

(iii) Respondents had *not* established that Brody attempted to encourage the same; (iv) Respondents had *not* established that Rabbi Mayer, Shimon, and Brody interfered with student groups on the Property; (v) Respondents had *not* established that Appellants harassed any tenant or prospective tenant on the Property; and, finally (vi) Respondents established by clear and convincing evidence that a confrontation occurred on the Property involving Sima Zaks but that only a warning, rather than a contempt citation, was warranted for that conduct. (Order at 7-9).

Based on the contemptuous conduct established in (i)-(ii) above, the Bankruptcy Court issued, on April 14, 2022, *inter alia*: (i) compensatory judgments against those Appellants occupying housing units on the Property for the fair market value of rent for the months of April 2021 through April 2022; (ii) prospective monetary sanctions for each such Appellant occupying housing units to continue to pay such charges for each month they remained on the Property; (iii) a judgment against Shimon in the additional amount of $5,000; and (iv) a Judgment of Possession pursuant to Federal Rule of Bankruptcy Procedure 7070 directing any Appellants occupying a housing unit on the Property to vacate such housing unit and directing the Clerk of Court to issue a Writ of Assistance to the United States Marshal's Service to physically remove any Appellants who did not comply with the Judgment of Possession. (Order at 9-12).

Appellants filed a Notice of Appeal to this Court on May 10, 2022, seeking to overturn the Order and the sanctions imposed thereby because: (i) "the Bankruptcy Court's assurances that it would not evict Appellants preclude the . . . Order"; and (ii) the Eviction Order [April 14, 2022 Order] impermissibly punishes Appellants for engaging in protected speech." (App. Br. at i).

## STANDARD OF REVIEW

Where—as here—the Court exercises its appellate jurisdiction over proceedings in the United States Bankruptcy Court, *see* 28 U.S.C. § 158(a), it:

> may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

28 U.S.C. § 2106; *see also In re Bernard L. Madoff Inv. Secs., LLC*, No. 15-CV-01151, 2016 WL 183492, at *8 n.14 (S.D.N.Y. Jan. 14, 2016) (explaining that, although Federal Rule of Bankruptcy Procedure 8013 was amended and language explaining that the Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings" was removed, the authority remains because "logic compels" that result "with respect to the appellate powers of the District Court" (internal quotation marks omitted)), *aff'd sub nom. Matter of Bernard L. Madoff Inv. Secs., LLC*, 697 F. App'x 708 (2d Cir. 2017).

When reviewing a bankruptcy court's contempt order, this Court "may set aside the order only for abuse of discretion, but such review is more exacting than under the ordinary abuse-of-discretion standard because a bankruptcy court's contempt power is narrowly circumscribed." *In re DiBattista*, 615 B.R. 31, 38 (S.D.N.Y. 2020) (citing *In re Blair Ventures, LLC*, 581 B.R. 728, 732 (S.D.N.Y. 2017)). A bankruptcy court's award of sanctions is also subject to this abuse of discretion standard. *Solow v. Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010). This standard allows this Court to disturb the bankruptcy court's order when the bankruptcy court "(1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 627 (2d Cir. 2018) (internal quotation marks omitted). Accordingly, a district court reviews a bankruptcy court's findings of fact for clear error and reviews conclusions of law *de novo*. *See In re Bayshore Wire Prods. Corp.*, 209

F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, [and] its conclusions of law *de novo* . . . ." (internal citations omitted)). "A district court 'may affirm [the bankruptcy court's decision] on any ground that finds support in the record, and need not limit its review to the bases relied upon in the decision[] below.'" *In re Ampal-Am. Israel Corp.*, 554 B.R. 604, 617 (S.D.N.Y. 2016) (quoting *Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (Bankr. S.D.N.Y. 2010)), *aff'd*, 691 F. App'x 12 (2d Cir. 2017). "That said, the district court may not consider evidence outside the record below." *Id*.

## ANALYSIS

Appellants challenge the Order on this appeal and raise two arguments for this Court to consider: (i) whether the Bankruptcy Court's prior assurances that it would not evict Appellants preclude the Order; and (ii) whether the Order impermissibly punished Appellants for engaging in protected speech.[7] The Court will address these arguments *seriatim*.

I. The Bankruptcy Court's "Prior Assurances"

Appellants acknowledge that the Injunction prohibits them "from (1) '[e]ntering onto or remaining' on the Property; (2) '[d]enying or obstructing access by any person' to the Property; (3) '[d]isrupting, conducting, or interfering with any religious service or study taking place' on the Property; and (4) '[i]nstructing or advising any resident of any residential unit' located on the Property 'not to pay rent.'" (App. Br. at 6 (quoting Injunction at 16-17 (alterations in original))). The Bankruptcy Court found that "[Respondents] have established by clear and convincing evidence that [Appellants] each intentionally violated the Injunction and First Enforcement Order

---

[7] Appellants purport to raise a third "point" in their opening brief, to wit: that the Injunction is currently on appeal in front of the Second Circuit and that, if the Circuit overturns the Injunction, the Order too must be overturned. (App. Br. at 24-25). Appellants, however, do not seek any relief from this Court in connection with that argument, "make th[e] point only to foreclose any claim" of waiver, and it is not pressed in their Reply. Accordingly, the Court need not and does not address that point in this Opinion.

by each repeatedly entering onto, using and occupying the CRDI Property," which is squarely within the prohibitions clearly set forth in the Injunction. (Order at 7).

Appellants do not argue that the language of the Injunction is ambiguous on its face, or that Judge Drain's factual findings were erroneous. (*See generally*, App. Br.). Nor can they. This Court already upheld the validity of the initial Injunction on January 6, 2022 in *Zaks v. Mosdos Chofetz Chaim Inc.*, No. 21-CV-05654 (S.D.N.Y.) (Doc. 29) and it is undisputed that Appellants reside on the Property.

Appellants instead argue that "[t]hey were entitled to rely upon [prior] assurances [by the Bankruptcy Court that it would not evict them] in organizing their lives and making litigation decisions." (App. Br. at 13).[8] Appellants posit that the "insistence that Appellants would not be evicted from their homes – despite the Injunction – created 'a fair ground for doubt as to the unlawfulness of [their] conduct'" (*id.* at 13 (quoting *Next Investments LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021) (alteration in original))) and that Judge Drain modified the Injunction when he "conveyed the terms of [it] to Appellants in such a way that there was no reason for them to fear eviction" (*id.* at 14).[9] This argument misses the mark entirely and is nothing more than a blatant attempt to re-litigate the unambiguous Injunction language. Shoehorning Judge Drain's prior comments into the Injunction—as if to suggest it creates an excuse for Appellants'

---

[8] Respondents posit that this argument is waived because it was not raised below before the Bankruptcy Court. "It is well-settled that 'any argument not raised in the bankruptcy court is considered waived and will not be considered by the district court, unless such a waiver would result in manifest injustice.'" *Zaks*, 2021 WL 5854030, at *3 (quoting *In re Ampal-Am. Israel Corp.*, 554 B.R. at 617-18). It appears, however, that Appellants' former counsel raised this argument, albeit briefly, at the Bankruptcy Court's April 5, 2022 hearing and it is, therefore, not waived for review here. (Br. Doc. 220 at 305:12-21).

[9] Appellants rely on *Chevron Corp. v. Donziger*, 990 F.3d 191 (2d Cir. 2021) for the proposition that it is possible to subsequently modify an Order in such a way. Whether such a modification is possible, however, is not the issue—it is whether such a modification made the Injunction ambiguous as to what *conduct* Appellants were enjoined from.

contumacious behavior or otherwise modified the Injunction—is not only inappropriate but it ignores the record upon which this appeal is based.

As the Supreme Court has held in the bankruptcy context, there is no doubt that "principles of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt" and "[t]his standard is generally an *objective* one." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (internal quotation marks omitted, emphasis in original).[10]

Judge Drain's prior comments on the possibility of eviction, the most recent of which were made nearly eight months prior to the Order, have no bearing on whether the Injunction was clear and unambiguous as to the conduct proscribed. There is no question that Appellants were prohibited from remaining on the Property, they just thought the penalty would be monetary and not eviction. Judge Drain, though, repeatedly exercised his discretion to implement sanctions that he deemed best fit to ensure compliance with the Injunction. That those sanctions changed in nature over time is of no surprise and was, indeed, entirely foreseeable. Repeated monetary sanctions issued against Appellants were unsuccessful in ensuring Appellants' compliance. Common sense suggests that when you repeatedly violate a court's order, in the exercise of reasoned and wise discretion, sanctions will become more coercive over time, even if the more coercive remedy was initially excluded by the Judge.

Nor was the Bankruptcy Court's decision to issue a Judgment of Possession and corresponding Writ of Assistance in any way "impulsive." Judge Drain did not change his mind overnight and in fact gave Appellants every opportunity to comply with his Injunction. From the

---

[10] *Taggart* noted that "a party's good faith, even where it does not bar civil contempt, may be helpful to determine an appropriate sanction," but that situation is not applicable here. 139 S. Ct. at 1802.

time of the hearing Judge Drain stated that "I will not enforce the [Injunction], other than by monetary sanction, and I will not order sanctions that are tantamount to an eviction"[11] (Br. Doc. 124 at 249:24-250:01) on August 30, 2021 until the issuance of the Order, nearly eight months had lapsed without Appellants leaving the Property on their own accord. Their refusal to leave coupled with their refusal to pay *daily* monetary fines of $5,000 caused Respondents to seek additional relief. Respondents moved the Bankruptcy Court for a writ of bodily attachment directing removal of Appellants from the Property (Br. Doc. 136 at 23). Respondents, in their motion, detailed the basis therefor:

> Rabbi Mayer and his family members continued to come onto the CRDI Property . . . as if the Injunction did not exist, as if the Contempt Order did not exist, as if the Enforcement Order did not exist, and as if their multiple attempts to stay each of those orders had not been unsuccessful . . .
>
> [Appellants] blatantly and intentionally violated the Enforcement Order's prohibition against them engaging in *any* activities on the CRDI Property. Indeed their contemptuous conduct was *ongoing, repeated and constant*, from March of 2021 . . . through November of 2021 . . .
>
> [Appellants] have managed to buy more than two years since CRDI lawfully purchased the CRDI Property, all while using the CRDI Property without paying any rent for use and occupancy, destabilizing CRDI's ability to manage and control its own property, and interfering with CCI's religious activities . . .
>
> It is quite clear that Rabbi Mayer and his family have absolutely no intention of adhering to the Court's ruling that they have no right to occupy any housing unit on the CRDI Property or complying with the Court's prohibition against them entering and/or conducting any activities on the CRDI Property.

---

[11] Judge Drain qualified this statement shortly thereafter and noted that "I may have th[e] power [to issue a writ of eviction]. I'm just reluctant to use it at this point." (Br. Doc. 124 at 255:21-22). Clearly, Judge Drain sought to compel compliance with the Injunction by the use of monetary judgment but did not exclude actual removal of Appellants from the Property.

(*Id.* at 20-22 (emphases in original)). The Bankruptcy Court held four days' worth of evidentiary hearings on this motion, and Appellants were given an opportunity to voice any concerns on the record—the bulk of which comments were only conclusory and unavailing. (Br. Doc. 220 at 305:12-21). Indeed, Appellants took the position at the hearing, in a passing reference, that Judge Drain had no authority to issue the removal order authorized by Rule 70.

Federal Rule of Civil Procedure 70 empowers a court to "order [a conveyance of land] to be done—at [a] disobedient party's expense—by another person appointed by the court."[12] Judge Drain, in finding this remedy appropriate at the April 5, 2022 hearing, explained that:

> I have not, however, issued a judgment that [Appellants] shall leave the premises until today. I believe it is appropriate at this time, approaching close to the one year anniversary of the April 22, 2021 motion [for the Injunction] and more than one year since the April 2nd order [establishing CRDI's ownership of the Property] was entered, that the [Appellants] leave CRDI's premises in furtherance of the free and clear order that I entered in conjunction with the plan.

(Br. Doc. 220 at 352:15-21). Based upon my own review of the record below, this Court agrees that it was time for this coercive measure, which was justified based on the factual circumstances at hand. Appellants had, by this time, engaged in nearly a year's worth of non-compliance with the Injunction, showed complete disregard for monetary sanctions that were ordered on numerous occasions, failed to provide a legal justification for their contempt across multiple days of hearings, and gave no indication that anything less than their physical removal would be required to provide CRDI with free and clear use of its rightfully owned property.

The Bankruptcy Court did not abuse its discretion here. Judge Drain's decision was sound, based on the correct legal standards and a substantial and supported factual record; and was within the range of permissible decisions. The sanctions were "reasonable in light of the facts," which

---

[12] Rule 70 is made applicable to bankruptcy courts by Federal Rule of Bankruptcy Procedure 7070.

included repeated and extended non-compliance by the Appellants after lesser coercive measures were imposed. *Next Investments*, 12 F.4th at 131. In sum, Appellants' argument that Judge Drain's earlier comments regarding eviction created some form of uncertainty about the breadth and meaning of the Injunction is belied by the very record upon which Appellants appeal. It was Appellants' consistent failure to comply with the Injunction which caused the Order to be issued. Judge Drain's prior comments did not create some uncertainty about the legal authority of the Bankruptcy Judge to remove Appellants. Judge Drain's Order in that regard is affirmed.

II. <u>Protected Speech</u>

The Bankruptcy Court found that "[Respondents] have established by clear and convincing evidence that [Shimon] intentionally violated the Injunction and First Enforcement Order by attempting . . . on the CRDI Property, to encourage persons wishing to enter the synagogue building located on the CRDI Property to go elsewhere." (Order at 8). Based on this conduct, the Bankruptcy Court fined Shimon $5,000 in addition to sanctioning him separately for physically entering the Property. (*Id.* at 11).

Appellants do not challenge this factual finding but argue, nevertheless, that the Order infringed upon protected speech because it "punished Shimon for simply speaking . . . Trespassers may be arrested by the police for invading another's property [but] they cannot be punished for simply communicating a specific message while there." (App. Br. at 17).[13]

The Court disagrees—when a property is "privately owned and . . . has not been dedicated to public use, 'the constitutional guarantee of free expression has no part to play.'" *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 421 (S.D.N.Y. 2013) (quoting *Hudgens v. N.L.R.B.*, 424 U.S. 507,

---

[13] Respondents point out that Shimon is not included in the list of Appellants in Appellants' opening brief. However, Shimon was included in the list of Appellants in the Notice of Appeal and the Court has no reason to believe that his omission from the list in Appellants' brief was intentional. (*See supra*, n.4).

521 (1976)). The Supreme Court "has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only." *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 568 (1972).

CRDI is the lawful owner of the Property and has requested that Appellants not enter the Property, remain on the Property, or engage in conduct on the Property. The Injunction protects CRDI's property rights and does not bear on the First Amendment. *See Crist v. Vill. of Larchmont*, 797 F. Supp. 309, 313-14 (S.D.N.Y. 1992) ("Plaintiff was not seeking to picket the fund-raiser at the church, he was insisting on the right to express his views inside the church . . . [h]owever, 'the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired.'" (quoting *Gannett Satellite Info. Network, Inc. v. Metro. Transp. Auth.*, 745 F.2d 767, 772 (2d Cir. 1984))), *aff'd*, 9 F.3d 1537 (2d Cir. 1993).

In that vein—this Court has previously held with respect to the Injunction that:

> the rights guaranteed under the First Amendment are not unlimited, and [Rabbi Mayer] is not guaranteed the right to worship on any property he so desires . . . . Accordingly, the [Injunction], which merely enjoins Appellant from entering the Property and conducting religious services and study thereon, has not and does not deprive Appellant of his right to freely exercise his religion, because he is not the Property's owner and he has no right of access thereto. Such a minor limitation, which only prevents Appellant from exercising his religion on a property that he has no lawful right to be on, and conversely, protects CRDI's property interests, is hardly a First Amendment deprivation.

*Congregants of Mosdos Chofetz Chaim Inc.*, 2021 WL 5359663, at *5. This analysis applies with the same force here to Shimon's speech as it did to Rabbi Mayer's free exercise.

As Respondents point out, "*none* of th[e] cases [cited by Appellants] involves a prohibition on free speech prohibited by a property owner *on private property*." (Opp. Br. at 36 n.14 (emphasis in original)). Appellants fail to respond to this in reply and do not point to any additional case law

13

supporting their position. (*See generally*, Reply). Appellants' failure to recognize that First Amendment rights are circumscribed while on privately owned property—as a trespasser and in violation of a court order no less—is fatal to their argument.

That Shimon was punished both for trespassing on the Property *and* for trying to convince synagogue-goers to worship elsewhere does not change this analysis. The Injunction prohibited both actions and, were the Court to adopt Appellants' perspective, contemnors would be free to violate the Injunction at will once on the Property. This is an unworkable proposition and the Bankruptcy Court had clear discretion to sanction both entry onto the Property and any subsequent contemptuous verbal conduct thereon.

Further, Appellants also argue that the Bankruptcy Court's "broad proscriptions against interfering with any religious service and engaging in any conduct on the Property" are unconstitutionally vague. (App. Br. at 22 (internal quotations omitted)). The Court disagrees. The Injunction prohibits both entry onto the Property and additional conduct while on it, including the launching of insults or attempts to convince worshippers to leave. Again, the Bankruptcy Court's factual findings on this issue were sound, the law was applied correctly, and the outcome fell within the range of permissible decisions. Appellants' protected speech argument fails.

## **CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's April 14, 2022 Order at Br. Doc. 198 is AFFIRMED.

The Clerk of the Court is respectfully directed to terminate this case.

                                                         **SO ORDERED:**

Dated:  White Plains, New York
          September, 22, 2022

                                                    PHILIP M. HALPERN
                                                    United States District Judge